IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SARA C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 21 C 6460 |
| v. | ) |
| | ) Magistrate Judge Finnegan |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Plaintiff Sara C. seeks to overturn the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the ALJ's decision. After careful review of the record and the parties' respective arguments, the Court affirms the ALJ's decision.

**BACKGROUND**

Plaintiff protectively filed for DIB on July 16, 2019, alleging disability since October 1, 2017 due to: back surgery, left thumb reconstruction surgery, arthritis, fibromyalgia, and left shoulder and arm surgery. (R. 143, 169). Born in 1968, Plaintiff was 48 years old as of the alleged disability onset date making her a younger person (under age 50).

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

20 C.F.R. § 404.1563(c). She subsequently changed age categories to a person closely approaching advanced age (age 50-54). 20 C.F.R. § 404.1563(d). Plaintiff has a college education and lives in a house with her husband and four-year-old adopted grandson. (R. 32-33, 170). Plaintiff spent 10 years working at an engineering firm and held the position of executive assistant when she left in September 2006. (R. 34-35, 170). In July 2009, Plaintiff became the office manager of a local township running the day-to-day operations of the office and assisting the director. (R. 35, 170). She left that job on October 1, 2017 due to her conditions, but in late 2019 she volunteered at an after-school care program for a few months. (R. 35, 154). That work did not constitute substantial gainful activity, and Plaintiff has not been meaningfully employed since the alleged disability onset date. (R. 35).

The Social Security Administration denied Plaintiff's application initially on November 12, 2019, and again upon reconsideration on April 9, 2020. (R. 52-78). She filed a timely request for a hearing and appeared before administrative law judge Janice M. Bruning (the "ALJ") on November 18, 2020.[2] (R. 30). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Aimee Mowery (the "VE"). (R. 30-51). On March 4, 2021, the ALJ found that Plaintiff's fibromyalgia, cervical spine stenosis and degenerative disc disease, degenerative changes of the lumbar spine and history of surgery, osteoarthritis of the right hand and right thumb, thoracic spine disc protrusions, and obesity are all severe impairments, but that they do not alone or in combination meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16-18).

---

[2] The hearing was held telephonically due to the COVID-19 pandemic.

After reviewing the medical and testimonial evidence, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work involving: occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, crawling, bending, and twisting; occasional reaching overhead; occasional use of the upper extremities to push and pull; frequent use of the hands to handle, finger, and feel; and an ability to stand for 1 to 2 minutes after sitting for 30 minutes. (R. 18-22). The ALJ accepted the VE's testimony that a person with Plaintiff's background and this RFC could perform Plaintiff's past work as an administrative assistant and an office manager. The ALJ thus found Plaintiff not disabled at any time from the October 1, 2017 alleged disability onset date through the date of the decision. (R. 23). The Appeals Council denied Plaintiff's request for review on October 4, 2021. (R. 1-5). That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009); *Payne v. Colvin*, 216 F. Supp. 3d 876, 880 (N.D. Ill. 2016).

In support of her request for reversal or remand, Plaintiff argues that the ALJ erred in finding that she can frequently use her hands and concentrate enough to perform skilled work despite the side effects from her medications. As discussed below, this Court finds that the ALJ did not commit reversible error and her decision is supported by substantial evidence.

## **DISCUSSION**

**A.    Standard of Review**

A claimant is disabled within the meaning of the Social Security Act if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).  In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy."  *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing (citing 20 C.F.R. § 404.1520(a)-(g)).  If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five.  *Id.*

In reviewing an ALJ's decision, the Court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner."  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)).  *See also L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1151-52 (7th Cir. 2019).  The Court "will uphold the ALJ's decision if it uses the correct legal standards, is supported by substantial evidence, and build[s] an accurate and logical bridge from the evidence to [the ALJ's] conclusion."  *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (internal citations omitted).  Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).

**B. Analysis**

    **1. Hand Use**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in finding that she has the ability to frequently handle, finger, and feel, meaning up to 2/3 of a workday.[3] A claimant's RFC is the maximum work that she can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Anna-Marie L. v. Kijakazi*, No. 21 C 50354, 2022 WL 4610120, at *2 (N.D. Ill. Sept. 30, 2022) (quoting *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)). "Both the RFC assessment and the hypothetical question posed to the [VE] must include all of a claimant's limitations supported by the medical record." *Joshua J. H. v. Kijakazi*, No. 21 C 837, 2022 WL 2905673, at *2 (N.D. Ill. July 22, 2022) (quoting *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021)).

The ALJ limited Plaintiff to frequent as opposed to constant handling, fingering, and feeling, noting that greater activity can aggravate pain or discomfort in the fingers, thumbs, hands, and wrists. (R. 21-22). In reaching this conclusion, the ALJ acknowledged that on January 11, 2016, Plaintiff had a left thumb trapezium excision with ligament reconstruction and tendon interposition. (R. 20, 308). More than a year later,

---

[3] Plaintiff does not challenge the ALJ's determination that she has the physical RFC to perform a reduced range of sedentary work with various postural limitations, including occasional pushing, pulling, and reaching overhead with her arms. Any such arguments have been waived. *See Underwood v. Saul*, 805 F. App'x 403, 406 (7th Cir. 2020) (arguments not raised before the district court are waived).

5

during a post-operative visit with orthopedic surgeon Jeffrey A. Kazaglis, M.D., on February 9, 2017, Plaintiff complained of pain in the metacarpophalangeal (MCP) joint of the left thumb with gripping. (R. 353). On exam, Plaintiff had full range of motion in her left hand, the ability to oppose her thumb to her small finger, and no tenderness over the carpometacarpal (CMC) joint. (*Id.*). Though Plaintiff had some tenderness over the MCP joint and pain with valgus and varus stress, Dr. Kazaglis characterized the symptoms as mild. He instructed Plaintiff to take Naprosyn, wear a thumb brace, and follow up, all on an as needed basis. (R. 354).

Plaintiff did not mention further hand problems for nearly two years until October 2018 (which was more than a year after the October 1, 2017 alleged disability onset date). At an October 16, 2018 appointment with Dr. Kazaglis, Plaintiff mentioned pain in her left middle finger that had started three months earlier. (R. 349). An x-ray showed no abnormality and Plaintiff had full range of motion in the left hand and middle finger. Dr. Kazaglis thought Plaintiff could have early arthritis and instructed her to take over the counter medications as needed. (R. 351). On March 25, 2019, Plaintiff saw rheumatologist Richard R. Olson, M.D., for pain in several joints, including her hands and thumbs. (R. 342). On exam, Plaintiff had some tenderness in the CMC joints of both thumbs and some thumb pain during gripping, but she exhibited full range of motion in both her hands and wrists and normal grip and closure. Dr. Olson assessed arthritis of the CMC joints of both thumbs. (R. 343-44). At a follow-up appointment with Dr. Olson on July 5, 2019, Plaintiff still had normal range of motion in her wrists without pain, and her hands were normal except for some tenderness at the thumbs. (R. 340). Later that

6

month on July 31, 2019, Plaintiff told Dr. Kazaglis's colleague that her right thumb pain was minimal and she was lifting weights. (R. 335).

On October 16, 2019, Plaintiff saw neurosurgeon Dennis Y. K. Wen, M.D., primarily complaining of back pain and leg numbness. Plaintiff reported that her neck pain was the worst, with occasional radiation down both arms into the wrists, causing her to drop things. Dr. Wen instructed Plaintiff to take ibuprofen. (R. 375). Seven months later on May 11, 2020, Plaintiff had an annual exam with her primary care physician, Vanita Gupta, M.D. Plaintiff said that she worked in the yard but still had issues with her hands. To assist with the discomfort, Plaintiff was wearing a hand and thumb brace and taking gabapentin. (R. 655).

Plaintiff next complained of right thumb pain on August 6, 2020 during an appointment with Dr. Kazaglis. (R. 20, 636). According to Plaintiff, the pain had started about 3 to 4 months prior and was at a level of 10/10 with activity. She described the pain as aching, sharp, shooting, and throbbing, and said it was aggravated by any movements. (*Id.*). A thumb x-ray showed loss of joint space of the CMC joint with osteophyte formation, and an exam revealed tenderness in the right thumb. Plaintiff declined a cortisone injection so Dr. Kazaglis referred her for occupational therapy ("OT"). (R. 638). Following a few sessions of OT in August 2020, Plaintiff felt that her thumb was improving. (R. 676). By December 31, 2020, however, the right thumb pain had worsened again and was causing weakness, stiffness, limited range of motion, and intermittent numbness. (R. 20, 742). An x-ray once again showed osteoarthritic changes at the CMC joint of the thumb and Plaintiff had tenderness on exam despite near full digital range of motion. (R. 20, 21, 745). Dr. Kazaglis recommended surgical intervention, and on January 18, 2021,

he performed a right thumb trapeziectomy, ligament reconstruction and tendon interposition. (R. 21, 750-51).

Plaintiff addresses some of these records but fails to explain how they demonstrate that she is unable to frequently handle, finger, and feel. Most significantly, she ignores the fact that the ALJ found her to have greater manipulative limitations than any physician of record. On November 6, 2019, state agency consultant Ranga Reddy, M.D., opined that Plaintiff can use her hands without restriction (R. 56-60), and Charles Kenney, M.D., affirmed that determination on April 8, 2020. (R. 71-75). Plaintiff does not cite any contrary medical assessment or argue that the ALJ erred in evaluating the opinion evidence. As "courts within this Circuit have repeatedly held[,] '[t]here is no error' in the formulation of an RFC 'when there is no doctor's opinion contained in the record [that] indicates greater limitations than those found by the ALJ.'" *Hosea M. v. Saul*, No. 18 C 2926, 2019 WL 5682835, at *7 (N.D. Ill. Nov. 1, 2019) (quoting *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018)).

Given the lack of medical support for greater manipulative restrictions, Plaintiff's primary argument for remand is that the ALJ improperly discounted her own statements of disabling hand symptoms. In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors including: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8

(Oct. 25, 2017). "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Benito M. v. Kijakazi*, No. 20 C 5966, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (quoting *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022)). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278.

Plaintiff completed Function Reports on October 10, 2019 and March 15, 2020. In both documents, Plaintiff said that on a typical day she gets her grandson ready for school, prepares his breakfast and lunch, and does housework to the best of her ability. She also cooks five days per week for up to an hour to prepare dinner for the family. (R. 187, 188, 211). By March 2020, Plaintiff was having trouble opening jars and packages but was still able to do some laundry, clean, dust, sweep, and fill the dishwasher, just not all on the same day. (R. 212). As long as she is not taking strong pain medications, Plaintiff can drive and go out alone. (R. 189, 213). At the November 18, 2020 hearing, Plaintiff testified that she had been wearing a hand brace for the previous five or six months due to right thumb pain and expected to have surgery soon. (R. 36-37). If she put pressure on the thumb, it caused a shooting pain up her arm and she kept dropping things. (R. 38). Plaintiff stated that she could not text with her thumbs so utilized voice activation instead. (R. 42).

9

In discounting Plaintiff's statements, the ALJ noted that she was able to use her hands for various activities that required handling, fingering, feeling, gripping, and grasping, such as driving, preparing food, doing laundry, cleaning, opening and closing the door to let her dog in and out, and playing board games. (R. 22). *See Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) ("[I]t is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated."). Plaintiff argues that this observation was improper because there is no evidence as to how often she did these activities, much less that it was up to 2/3 of a workday as would be required for full-time employment. (Doc. 13, at 11-12) (citing *Carradine v. Barnhart*, 360 F.3d 751, 755-56 (7th Cir. 2004) (ALJ erred in equating the plaintiff's ability to engage in sporadic physical activities with an ability to work eight hours per day five days per week)).

The flaw in Plaintiff's argument is that the ALJ did not equate her ability to engage in various manipulative tasks with an ability to work. The ALJ merely cited those activities as one factor weighing against the reliability of Plaintiff's statements that she suffers from disabling hand limitations. (R. 22). This assessment is not patently wrong and does not amount to reversible error. *See Burmester*, 920 F.3d at 510 ("The ALJ did not equate Burmester's ability to perform certain activities of daily living with an ability to work full time. Instead, he used her reported activities to assess the credibility of her statements concerning the intensity, persistence, or limiting effects of her symptoms consistent with the applicable rules."). *Compare Rousey v. Heckler*, 771 F.2d 1065, 1070 (7th Cir. 1985) (ALJ erred in determining that the plaintiff "could return to her former employment as a

10

teleprinter because her daily activities are consistent with the ability to perform at least sedentary work.").

The ALJ also reasonably concluded that Plaintiff's complaints of disabling hand pain are not supported by the medical evidence. (R. 21-22). The record shows that after the January 2016 left thumb surgery, Plaintiff had minimal hand treatment until August 2020, and routinely presented with full range of motion, normal grip, and full hand closure despite some tenderness in the thumbs and pain with gripping. (R. 308, 335, 340, 343, 350-51, 353-54, 375, 636, 655). *See Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("[A] history of sporadic treatment . . . can undermine a claimant's credibility."); *Gwendolyn B. v. Saul*, No. 20 C 3244, 2021 WL 1812879, at *8 (N.D. Ill. May 6, 2021) (quoting *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018)) ("[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration."). It is true that Plaintiff ultimately needed a right thumb trapeziectomy in January 2021 (the same procedure she had on her left thumb in 2016), but there is no further documentation of pain after that procedure. And as noted, no physician of record imposed greater manipulative limitations than those found by the ALJ. *Best*, 730 F. App'x at 382.

An "ALJ's credibility assessment need not be perfect; it just can't be patently wrong." *Dawson v. Colvin*, No. 11 CV 6671, 2014 WL 1392974, at *10 (N.D. Ill. April 10, 2014) (citing *Schreiber v. Colvin*, 519 Fed. App'x 951, 961 (7th Cir. 2013)). Viewing the record as a whole, the ALJ provided valid reasons for discounting Plaintiff's subjective statements regarding her hand functioning, and fairly concluded that she has an RFC for frequent handling, fingering, and feeling. *See Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. Aug. 13, 2010) (finding no error where "[i]t was because of and not in spite of [the

11

claimant's] testimony that the ALJ limited her to a more restrictive residual functional capacity finding than any physician on the record."). Since that decision is supported by substantial evidence, Plaintiff's motion to remand the case for further consideration of these issues is denied. *Bruno v. Saul*, 817 F. App'x 238, 241 (7th Cir. 2020).

### 2. Ability to Perform Skilled Work

Plaintiff next argues that the ALJ erred in concluding that she can perform her past skilled work despite her testimony that pain and medication side effects interfere with her ability to focus and concentrate.[4] (Doc. 13, at 14-15). In the October 10, 2019 Function Report, Plaintiff stated that she takes pain medication multiple times per week, including ibuprofen and hydrocodone, and cannot pay attention for more than 10 to 15 minutes when she does. (R. 186, 193). She also has trouble with memory and needs to write things down to remember them. (R. 191). In the March 15, 2020 Function Report, Plaintiff reported taking pain medication every day, which limits her ability concentrate. (R. 210). She needs reminders to go places, can lose track of a conversation, and has to re-read paragraphs to understand them. (R. 214-15). When she is not on pain medication, she still can only concentrate for 15 minutes. (R. 215). At the November 2020 hearing, Plaintiff testified that her medications make her dizzy, sleepy, and lightheaded so she only takes them at bedtime. (R. 48-49). The drugs also interfere with concentration when reading or watching television, and have made her forget what she was cooking. (R. 49-50).

The ALJ acknowledged Plaintiff's testimony about pain and medication side effects but did not include any related restrictions in the RFC. (R. 22). Plaintiff says this was

---

[4] Plaintiff concedes that she does not have any mental impairments affecting her ability to do skilled work. (Doc. 13, at 14; Doc. 18, at 4-5).

12

error, citing to: (1) complaints she made about significant shoulder pain on October 31, 2019, right thumb pain on August 6, 2020, back and right leg pain on October 5, 2020, and severe right thumb pain that was interfering with daily activities on December 31, 2020 (two weeks before Plaintiff had thumb surgery in January 2021); (2) Dr. Wen's observations on October 5 and December 2, 2020 that gabapentin, tizanidine, and tramadol all have a sedating effect on her; and (3) x-rays and MRIs taken in October 2019 showing degenerative changes and stenosis of the cervical and lumbar spine. (Doc. 13, at 15, citing R. 421, 636, 663, 664, 761, 763; Doc. 18, at 6, citing R. 397, 412, 415, 418-19, 638, 757).

Plaintiff's objection is unavailing because she did not raise any concerns with her doctors about difficulty concentrating, and no physician indicated that pain or medications were causing her to lose focus. (R. 17). *See Zambrano v. Colvin*, No. 14 C 48, 2015 WL 6448046, at *7 (N.D. Ill. Oct. 26, 2015) (ALJ reasonably rejected claim that pain interfered with concentration where the plaintiff "points to no medical evidence discussing his concentration."); *Foglio v. Colvin*, No. 12 C 5270, 2014 WL 684643, at *13 (N.D. Ill. Feb. 19, 2014) (ALJ properly rejected the plaintiff's complaints that she could not concentrate due to medication side effects where she did not raise the issue with her doctors). To the contrary, doctors routinely described Plaintiff as fully alert, oriented, and cooperative, with a normal mood and affect and the ability to communicate and participate in appointments on her own. (R. 17, 309, 329, 333, 338, 342, 422, 426, 604, 626, 637, 674, 744).

The ALJ also found it significant that Plaintiff engaged in activities that require focus and attention, such as handling funds, cooking, baking, driving, playing board games, attending church, visiting family, reading, and caring for a 4-year-old child. (R.

13

17, 212-14). As for Plaintiff's allegations of drowsiness, she testified at the hearing that she takes her medications at bedtime to compensate for this issue and does not need to lie down to rest during the day. (R. 17, 22, 39). In addition, nothing in the medical records suggests that that she had to limit activities to account for daytime sleepiness. (R. 17). Finally, though Plaintiff claimed to experience dizziness on her medications, she affirmatively denied that symptom at medical appointments from February 2019 through December 31, 2020. (R. 309, 323, 329, 333, 347, 375, 422, 426, 604, 626, 637, 674, 744).

Viewing the record as a whole, the ALJ reasonably discounted Plaintiff's claimed inability to concentrate as a result of pain and medication side effects, and her decision to exclude such a restriction from the RFC was not patently wrong. *Grotts*, 27 F.4th at 1279. No physician of record imposed greater functional limitations than those found by the ALJ, *Best*, 730 F. App'x at 382, and her request to remand the case for further consideration of this issue is denied.

## **CONCLUSION**

For reasons stated above, Plaintiff's request to reverse or remand the case is denied and the Commissioner's Motion for Summary Judgment [14] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated: August 18, 2023

SHEILA FINNEGAN
United States Magistrate Judge